# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSE ZUNO, M11302, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )   Case No. 24-cv-2345-DWD<br>) |
| CHRISTEL S. CROW,<br>JON URASKI,<br>GREGORY D. LITTLE,<br>DIANE SKORCH, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Jesse Zuno, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pontiac Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights surrounding disciplinary proceedings at Pinckneyville Correctional Center (Pinckneyville). (Doc. 1). The Court dismissed Plaintiff's initial complaint for failure to state a claim, and his Amended Complaint (Doc. 14) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).  At this juncture, the factual

allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

Plaintiff's amended complaint centers on the same issues presented in the original pleading. Specifically, he contests the due process he was afforded in association with prison disciplinary proceedings about an event that transpired on March 5, 2024. In his amended complaint, he argues that the initial disciplinary report that he received was faulty because it was on an outdated form, and it did not reveal the identity of the reporting officer. He further argues that when it was served to him, he was not allowed to sign the original copy and thus could not use the appropriate procedure to request witnesses. He submitted a handwritten request for witnesses via the institutional mail but was not allowed to call those witnesses at the disciplinary hearing.

He argues the disciplinary hearing itself was insufficient because one of the hearing officers also served as a grievance review officer at the prison and thus was not impartial.[1] He also argues he was not allowed to present witnesses, the Adjustment Committee Summary did not comprehensively recount his factual account or verbal statements he made at the hearing, and the ultimate findings were not supported by some evidence. Specifically, he claims there was insufficient information from the confidential informants, and the lack of the reporting officer's name made it impossible for him to adequately challenge the factual premise of the ticket.

---

[1] He challenges her partiality because she allegedly reviewed a grievance about his ticket after the ticket was finalized, but it is not obvious how this would have made her impartial at the disciplinary hearing itself.

Plaintiff was in segregation in Pinckneyville for 42 days and complains that: the majority of yard time was cancelled, essential hygiene items and cleaning supplies were restricted, legal materials were restricted, education and programming was restricted, and audiovisual services were restricted. (Doc. 14 at 45). Plaintiff was then transferred to Pontiac where he alleges he expected serving 270 days in segregation, with an anticipated segregation release date of January 12, 2025. (Doc. 14 at 46). He complains that in segregation at Pontiac he had: inadequate meal portions, inadequate personal health and hygiene and cleaning items, no pillow, a leaky toilet, excessive noise, no chance to shave or trim his nails, no educational or vocational services, no mental health services or structured out-of-cell time, no weekly barber services, no segregation time cuts related to mental health, and restricted access to commissary items. (Doc. 14 at 46). Plaintiff alleges that the conditions at Pinckneyville and Pontiac were harsher than those in general population, administrative detention, or protective custody. Specifically, he argues these other groups of prisoners have all of their privileges and no significant hardships relative to disciplinary segregation. (Doc. 14 at 46-47).

In support of the original and amended complaints, Plaintiff submitted his Adjustment Committee Summary (Doc. 14 at 50) and the initial disciplinary report (Doc. 14 at 37-38). The disciplinary report, filed by Uraski on March 15, 2024, indicated that:

> There was an incident report completed by a Pinckneyville CC staff who stated on March 5, 2024, at approximately 2:30pm he overheard Zun[o] along with (4) four other individuals in custody discussing what firearms and how much ammunition is kept in the towers. Staff stated Zuno stated that the population at Pinckneyville CC needs to stick together because they cannot get us all. The Intelligence Unit interviewed other individuals in custody about the conversation that occurred in the school building.

> Confidential sources were interviewed and they shall remain nameless due to safety and security and are deemed reliable to do the description of the event as it occurred. C/Ss stated Zuno is sick of being at Pinckneyville CC and believes individual in custody are treated poorly. C/S stated Zuno said that there are a lot of people with a lot of time to do and they need to stand together by taking the yard. C/S stated Zuno said if that does not work we will do something else. C/S stated Zuno was the main instigator trying to get people to follow his lead. Due to the Staff incident report that was completed and C/S statement the Intelligence Unit has justified the above charges. Zuno was identified by state ID and institutional graphics.

(Doc. 14 at 37-38). The disciplinary report indicated that Plaintiff refused to sign for it on March 18, 2024. (Doc. 14 at 37). There was a slip to detach and return to request witnesses, but it was blank. (*Id.*).

The Final Adjustment Committee Summary indicated that Plaintiff pled not guilty and provided a written statement. (Doc. 14 at 50). The ticket reflected a 111 violation of "leading others to take over the institute[ion]" and a 208 violation (dangerous communications) for "talking to others about tower firearms." (*Id.*). As the basis for the decision, the committee recited evidence above from the disciplinary report and concluded that both offenses (the 111 and 208) were substantiated based on the original staff incident report from March 5, 2024, and the corroboration by confidential sources who recited details of the event consistent with that original report. (*Id.*). The basis for decision also indicated that the committee reviewed Plaintiff's written statement, wherein he insisted he does not attend school until 1pm. The committee reasoned that this statement supported a finding of guilt, because it would have placed Plaintiff at the school building at 2:30pm on the day of the incident. Thus, the committee found Plaintiff guilty and assessed, 2 months C-grade, 1 year of segregation, a disciplinary transfer, and

6 months of contact visit restrictions. (*Id.*). Defendants Little and Skorch signed as hearing committee members, and on March 28, 2024, Crow approved the findings. (Doc. 14 at 51).

Based on the allegations in the Amended Complaint, the Court will designate the following claims:

> **Claim 1:** **Fourteenth Amendment Procedural Due Process claim against Defendants related to Plaintiff's disciplinary ticket and disciplinary conviction in March of 2024;**
>
> **Claim 2:** **Substantive Due Process claim against Defendant Uraski for utilizing an outdated version of the disciplinary report form.**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

As the Court previously explained, to establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Six months in segregation and six months' loss or restriction of privileges—do not, without more, implicate a protected liberty interest. See *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary

segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade).  A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest.  See *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015).  There is no bright-line rule for the duration or conditions of segregation that might invoke a protected liberty interest, but generally a term of segregation approaching or exceeding a year may be considered significant enough to invoke due process protections.  See e.g., *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (finding that a term of 240-days of segregation was long enough to mandate an inquiry into the conditions of the confinement).  However, the imposition of disciplinary segregation without "additional facts about the conditions of confinement, [does] not implicate a liberty interest." *Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019).

Prisoners do not have a liberty interest in avoiding transfer from the general prison population to discretionary segregation, and even "extremely harsh prison conditions" may not be so "atypical" as to create a liberty interest.  *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (collecting cases).  In *Hardaway*, the Seventh Circuit found that six months in segregation with a confrontational cellmate, psychological hardships associated with a solid steel door, and limited shower and yard access were not sufficiently harsh to implicate a liberty interest.  734 F.3d at 740 (7th Cir. 2013).  In *Mathews*, the Seventh Circuit found that an inmate with 18-months of segregation time did not have a protected liberty interest where he had 5-10 hours of out-of-cell time, three

showers, one-hour of video visits per week, and one or two phone calls a month. 768 Fed. App'x 537, 539-40. The Court noted it was a long term of segregation, but it came nowhere near the complete deprivation of human contact or sensory stimuli contemplated in association with a liberty interest in other precedent. *Id.; citing Wilkinson v. Austin*, 545 U.S. 209, 214 (2005).

The Court faulted Plaintiff's original complaint for lacking detail about the conditions of his term of segregation, saying at most that it was "harsh." In the Amended Complaint, Plaintiff provides marginally more detail about the conditions by identifying categories of things he found sub-par. In his declaration, he complains of lacking personal hygiene and cleaning items, of small food portions, of excessive noise, of the lack of a pillow, of the lack of mental health services and structured out-of-cell time, and more. He argues the conditions he experienced for a total of about 312 days were "extremely different" than any other form of confinement and constituted a "significant hardship." (Doc. 14 at 45-46). The Court is still skeptical that the conditions described are sufficient to invoke a liberty interest. As with *Mathews*, the conditions do not suggest a total deprivation of human contact or sensory stimuli, and instead suggest restrictions on amenities.

Even if the Court assumes that Plaintiff's conditions were atypical such that he has a protected liberty interest, he has still failed to establish a procedural due process violation. In a situation where an inmate complains of discipline such as segregation, or anything other than the loss of good-time credit, the disciplinary proceedings are subject to an informal due process inquiry. Informal due process requires only that an inmate is

provided (1) notice of the reasons for his placement in segregation, (2) and an opportunity to present his views in a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024). Here, Plaintiff does not contend that he lacked notice of the reason for his placement in segregation. He attempts to make a technical argument that the notice was insufficient because it was on an outdated form or he was not allowed to sign the form to request witnesses, but neither of these things impact his ability to understand the nature of the allegations against him. He also argues that Uraski's report was faulty because it did not reveal the name of the staff member who overheard him on the day of the incident and made a report, but again this did not deprive him of a basic understanding of the allegations against him.

In addition to having notice of the charges against him, Plaintiff also admits that the hearing officers (Defendants Little and Skorch) accepted his written statement, and the Adjustment Committee report shows that they considered it because they discussed the substance of his statement. He argues they disregarded some of his verbal challenges and did not allow him to call witnesses, but under an informal due process inquiry they were not required to do either of those things.

Plaintiff argues at length that the disciplinary outcome was not supported by some evidence and that the use of all confidential sources was improper, but even considering these factors, the proceedings were sufficient. The confidential sources all provided testimony that was corroborated by the reporting staff member. *Whitford v. Boglino*, 63 F.3d 527, 535 (7th Cir. 1995) (a prison disciplinary board may keep the identities of confidential informants' secret if there is an indication that their information is reliable,

such as corroborating testimony). Plaintiff argues that their testimony was too vague, and did not explicitly place responsibility on him, but the disciplinary report and Adjustment Committee summary both contain a thorough recitation of the events giving rise to the discipline.

Plaintiff also tries to argue that because he did not commit an overt act, he should not have been disciplined, but this is unpersuasive. As the Court explained in the previous review of Plaintiff's complaint, he was charged with offenses that did not require establishment of an overt act. He also tries to argue that the speech he was punished for took place in the school building where individuals should be able to speak freely under the protections of the First Amendment. Not all speech within prisons is protected, and certainly speech of an inmate trying to organize others to revolt against staff is not protected speech. *See e.g.*, *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected.").

Plaintiff made a few other miscellaneous arguments in relation to the prison's compliance with Illinois Administrative Procedures, but violations of prison rules or even state statutes are not equivalent to a constitutional violation. *See e.g.*, *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (violations of state laws, or departmental regulations or policies do not amount to a constitutional violation cognizable under § 1983).

In sum, the Court finds that Plaintiff has not adequately pled a due process violation because even if he had a protected liberty interest, he was afforded adequate process with notice of the hearing and a chance to present a written statement. It is

certainly possible that Plaintiff may be able to present an Eighth Amendment conditions of confinement claim about his time in segregation, but he has not named any defendants aware of his daily conditions or directly responsible for specific deprivations such as reduced showers or insufficient meals.  It is also significant to note that the vast majority of Plaintiff's time in segregation took place at Pontiac Correctional Center, a facility in Livingston County, Illinois, which is within the scope of the United States District Court for the Central District of Illinois. 28 U.S.C. § 93(b).  Thus, any complaint against staff who controlled Plaintiff's conditions of confinement at Pontiac would need to be filed in a different district.

Plaintiff also challenges Defendant Uraski's use of an outdated disciplinary form, arguing that the use of an old form voided his disciplinary proceedings and deprived the prison of jurisdiction.  He further argues this violated his substantive due process rights.  In order to state a substantive due process claim, a plaintiff must allege that "the government violated a fundamental right or liberty".... and "that violation must have been arbitrary and irrational." *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). Substantive due process protects individuals from only "the most egregious and outrageous government action." *Id.*  The Seventh Circuit has discussed the possibility that a right to substantive due process might be invoked in the prison disciplinary context if a "prison official's conduct might be so extreme that 'no subsequent procedural fairness could obscure or heal" it. *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006).  Despite acknowledging the possibility of a substantive due process right, the Seventh Circuit declined to extend such a right to a situation where a prison official allegedly tendered a

false report or evidence for disciplinary proceedings, because such a problem could still be cured by procedural due process protections. *Id.* at 624-25. Here, Plaintiff's allegation that an outdated form was used is nowhere near the level of conduct that might be so extreme that no subsequent procedural fairness could cure it. Although he argues the form was outdated, he does not explain what changed about the form, or why it matters relative to the allegations against him and the disciplinary outcome. Plaintiff's substantive due process claim is dismissed as insufficient.

Based on the foregoing analysis, the Court concludes that Plaintiff's complaint is insufficient to state a claim. Having considered Plaintiff's allegations twice, the Court is now satisfied that there is no set of facts he could present related to his theories of due process that would be sufficient to state a plausible claim against the named Defendants. Thus, the Court will not afford Plaintiff leave to file an amended pleading. *See e.g., Boyd v. Bellin*, 835 Fed. App'x 886, 889 (7th Cir. 2021) (noting that typically a pro se plaintiff should receive at least once opportunity to amend). This case is now dismissed for failure to state a claim under 28 U.S.C. § 1915A(b)(1). This dismissal shall count as one of Plaintiff's three allotted strikes under 28 U.S.C. § 1915(g).

### Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel. (Doc. 15). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff

appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff's first two motions for counsel did not contain proof of his efforts to recruit his own counsel, and the Court indicated in ruling on those motions that if Plaintiff renewed his request, he would need to provide proof of his efforts. (Doc. 12 at 12). Plaintiff has now supplied a letter from the Uptown People's Law Center that indicates he participated in a survey (Doc. 15 at 3), and perhaps that he complained about medical problems. Neither of these issues are relevant to seeking counsel for a lawsuit challenging a disciplinary proceeding or segregation. Plaintiff also provides copies of two envelopes (Doc. 15 at 4-5) that were allegedly mailed to a clinical law professor and a lawyer. This suggests that he might have sought counsel for this case, although the Court does not know the contents of this correspondence.

Even if the Court accepts that Plaintiff has attempted to recruit his own counsel, it still must assess the complexity of the case and his competence. As to Plaintiff's competence, he indicates that he has never filed a suit before and sought help from a jailhouse lawyer, that he is on the mental health caseload (he does not say why or how this impacts him), and that he is a high school graduate. This information does not suggest illiteracy or difficulty writing. Instead, it suggests merely that Plaintiff lacks an appreciation of applicable legal concepts. As the Court previously explained, at the pleading stage, this is not a significant problem because a plaintiff is only required to give a basic factual explanation of what happened, and he does not need to explain the relevant legal concepts or make legal arguments. The Court is not convinced that Plaintiff

lacks the competence to give a basic factual description of what happened, and he has not identified a competency-based factor that would prevent him from doing this.

In the present motion, Plaintiff merely says he has merit to his claims, but in his earlier motions he argued at length that the case would be too complex for him to pursue because there would be conflicting testimony, his status in restrictive housing would prevent him from gathering evidence, witnesses may be located at other facilities and the case would involve credibility determinations. (Doc. 10). Factors like these are important in considering the complexity of the case, but the Court is not convinced that this particular case is so difficult, especially at this early phase of the litigation. A prison transfer can be important, but Plaintiff attached many of the relevant disciplinary documents to his pleadings, and one of the key factors left for him to establish a valid due process claim was to allege that his conditions in segregation were atypical and significant (if a liberty interest was not violated, he has no due process claim and the conflicting testimony or credibility issues would not even arise). He spent most of his time in segregation at the facility he is still at while litigating this case, which suggests needed evidence and witnesses are readily available on the topic of atypical and significant conditions. As for problems of conflicting testimony and credibility determinations, these things would only arise later in litigation if Plaintiff was able to state a valid claim. The Court has explained in this Order that it does not believe Plaintiff can state a valid due process claim related to these disciplinary proceedings.

Attorney resources in the Southern District of Illinois are low relative to the hundreds of prisoner cases filed each year. The Court must be a good steward of the

limited resources that are available relative to the potential complexity and merit of the claims presented.  *See e.g., McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) (a judge may use available information from the pleadings and the judge's experience to assess the importance and potential merits of a case when considering appointed counsel). Here, the Court finds that the relative potential merit of this case is low as presented, and that an amended pleading could not ameliorate the situation for a due process claim, so it will not expend the resources of volunteer counsel to assist with this case.  *See e.g. Watts v. Kidman*, 42 F.4th 755, 763-64 (7th Cir. 2022) (courts must be careful stewards of the limited resource of volunteer lawyers).  For all of the foregoing reasons, the Court finds it appropriate to deny Plaintiff's Motion for Recruitment of Counsel (Doc. 15).

## Disposition

Plaintiff's Amended Complaint (Doc. 14) is **DISMISSED** under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.  Plaintiff's Motion for Recruitment of Counsel (Doc. 15) is **DENIED**.  The Clerk of Court is **DIRECTED** to enter judgment and to **CLOSE** this case.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  If Plaintiff chooses to appeal, he will be liable for the $505.00 filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur a "strike" under 28 U.S.C. § 1915(g).  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

F ED. R. A PP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: February 5, 2025

DAVID W. DUGAN
United States District Judge